# Gunkle's Appeal.

*Individual liability of stockholders of Lancaster Bank restricted to a compulsory assignment under the Act of* 1849, *extending the charter.— Liability of directors under the Act of March* 25th 1824.

1. The individual liability of the stockholders of the Lancaster Bank, under the act of re-charter of 7th April 1849, is incident to a *compulsory* assignment only.

2. Hence, the assignee, under a *voluntary* assignment, is not, on settlement of his accounts, chargeable for not enforcing liabilities, against stockholders, which were incident to a *compulsory* assignment.

3. But the directors of the bank, who had impaired its capital stock by declaring dividends, were personally liable therefor, under the Act of 25th March 1824: and by the general assignment of the bank these liabilities became vested in the assignee, who was bound to collect them, as well as any other assets of the institution.

APPEAL from the Common Pleas of *Lancaster county.*

This was an appeal by William Gunkle from the decree of the court below, affirming the report of the auditors on the account of Horace Rathvon, assignee of The Lancaster Bank. The material facts of the case, as found by the auditors, were these:—

On the 3d day of February, A. D. 1857, the Lancaster Bank conveyed to Horace Rathvon all its estate, real, personal, and mixed, "in trust for payment of all the just debts of said Lancaster Bank." This conveyance was recorded on the 5th February, A. D. 1857, and the trustee therein named entered upon the performance of the duties of the trust in the mode usually practised in cases of assignment by individuals for the benefit of their creditors; and, after one or more partial accounts, on the 1st day of January, A. D. 1862, filed his final account. The validity or efficacy of this appropriation of the property of the bank was not contested by either the stockholders or creditors of

the institution; but in behalf of certain of the creditors repeated efforts were made to use the agency of the trustee for the enforcement of the liabilities imposed upon stockholders and directors, by the 15th and 23d sections of the Act of Assembly of 7th April 1849, entitled an act to "extend the charter of the Lancaster Bank." The first was by petition to the Common Pleas of the county of Lancaster for *mandamus* to the directors of the bank, commanding them to file in the office of the prothonotary of the county the statement of the affairs of the bank, required by the 25th section of the Act of 1849, when a bank is compelled to make an assignment. The court refused to grant the prayer of the petition, on the ground that the provisions of that section were applicable only to a compulsory assignment, while that of the bank was a voluntary one under the Act of March 12th, 1842. Subsequently suits were brought, by creditors in the name of the assignee, against a number of persons who had been directors of the bank, for their proportional shares of the loss which had accrued by reason of the insolvency of the institution under the 23d section of the Act of 1749; in all of which cases the assignee filed disclaimers, and asked and obtained the leave of court to discontinue. Under the exceptions filed to this final account, it was urged that the refusal of the trustee to take any step for the enforcement of the liabilities of the stockholders and directors of the bank, as provided by the 15th and 23d sections of the Act of 1849, was a failure in the performance of his duty which rendered him liable to an amount equal to that which might have been realized, if he had proceeded to enforce those liabilities. These exceptions were as follows:—

1. The accountant has not charged himself with the whole estate of the assignor which came, or ought to have come, into his hands.

2. He has neglected and refused to sue the directors of the bank for the recovery of large sums of money known to have been declared in dividends out of the capital stock, and he ought to be charged with the money that could have been collected from them.

3. He has neglected and refused to sue out a *scire facias* against the stockholders of the bank, to recover the amount necessary to pay the outstanding circulation of the bank, and he ought to be charged with the money that could have been collected from them.

4. The accountant ought to be charged with the moneys that might have been collected by the suits instituted by undersigned exceptants in the name of the accountant against directors, and which were discontinued by the accountant against the consent of exceptants.

In support of these exceptions proof was offered "that the

[Gunkle's Appeal.]

stockholders of the bank are many of them responsible, and if the assignee of the bank had brought suit against them to recover their individual liability under the charter of 1849 he might have recovered an amount of money for the creditors equal to the par value of the stock held by them respectively.

" That the creditors, being note-holders and exceptants here, brought a number of suits in the Court of Common Pleas of Lancaster county, in the name of Horace Rathvon, assignee, against a number of directors of the Lancaster Bank, for declaring dividends out of the capital stock, which suits the said Horace Rathvon disclaimed, and asked leave of the court to discontinue the same. And the rule to discontinue aforesaid was made absolute by the court; and further, that in some of those suits the defendants were responsible men, fully able to have paid.

" And, that Horace Rathvon, the assignee, was at the time of the assignment an officer of the bank, and had possession of its books and papers, and was fully cognisant of the condition of the bank at the time of the acceptance of the assignment."

The question raised before the auditors was this : Was it the duty of the accountant to enforce against the stockholders and directors of the Lancaster Bank the liabilities to which they are respectively subjected by the 15th and 23d sections of the Act of 1849, extending the charter of that institution ?

After an elaborate examination of the authorities bearing upon this question, the auditors (H. B. Swarr, A. H. Hood, and A. Slaymaker) came to the following conclusion :— ·

1. That the proper instrumentality for the enforcement of the individual liabilities to which the stockholders and directors of the Lancaster Bank have been subjected by the Act of 12th March 1849, is a compulsory assignment.

2. That the provisions of the Act of 12th March 1849, with reference to compulsory assignments, have not abrogated the common law right of the Lancaster Bank to make a voluntary assignment for the benefit of its creditors.

3. That this having been a voluntary and not a compulsory assignment, the assignee was not empowered, and it was therefore not his duty to enforce against the stockholders and directors of the Lancaster Bank, the liabilities to which they individually have been subjected by the Act of 12th March 1849.

This report was excepted to by creditors of the bank, and the counsel for the accountant also objected to so much of the report as directed the payment of the costs of the audit out of the fund in court. The court below on hearing, confirmed the report of the auditors, overruling all the exceptions; which was the error assigned.

*James L. Reynolds, O. J. Dickey, W. W. Browne, George F. Breneman,* and *B. A. Shaeffer,* for appellants.

*A. Herr Smith*, for appellee.

The opinion of the court was delivered, June 22d 1864, by
READ, J.—The Lancaster Bank was incorporated under the
Act of 21st March 1814, regulating banks, to continue until the·
1st April 1825. By the Act of 20th March 1824, to recharter
certain banks, it was extended to the first Wednesday of May
1833, and no longer, that being the lowest class. By an act to
extend the charter of the Lancaster Bank, passed 22d April
1829, it was revived, and declared in force for eight years from
and after the said first Wednesday of May 1833, and, by another
extension Act, passed 16th April 1840, it was extended for ten
years, making its renewed charter expire on the first Wednesday
in May 1851.

The 13th article of the 3d section of the Act of 1824, which
is nearly a literal copy of the 13th article of the 7th section of
the Act of 1814, is in these words: "Dividends of so much of
the profits of the said several banks as shall appear advisable to
the directors of each bank, shall be declared at least twice a
year, on the first Tuesday of May and November in every year,
and paid to the stockholders on demand at any time after the
expiration of ten days therefrom; but such dividends shall in no
case exceed the amount of the net profits actually acquired by
the bank, so that the capital stock of said banks shall never be
thereby impaired. If the directors of any of the said banks
shall make any dividend which shall impair the capital stock of
such bank, the directors consenting thereto, shall be liable in
their individual capacities to such corporation for the amount of
the stock so divided; and each director present when such divi-
dend shall be made, shall be adjudged to be consenting thereto,
unless he forthwith enter his protest on the minutes of the board,
and give public notice to the stockholders of the declaring of
such dividend." Similar provisions are to be found in the
original charters of the Philadelphia Bank and of the Farmers'
and Mechanics' Bank.

The Act of the 7th April 1849, to extend the charter of the
Lancaster Bank, provided, in its 1st section, "that the charter ·
of the Lancaster Bank shall be and the same is hereby extended
and continued for the purpose of transacting the business of
banking at its present location, for the term of fifteen years from
the expiration of its present charter, with the capital stock as at
present provided by law, subject to the provisions imposed by
this act; and to the provisions now imposed upon the said bank
by existing laws of this Commonwealth, and to such further
provisions as the legislature may hereafter enact for the general
regulation of banks in this Commonwealth." This extension
and continuance of the charter to the year 1866, of course con-

tinued in force all the provisions of the old charter, which were not repealed or supplied by the extending Act. The general history of our banks up to the failure of the Bank of Pennsylvania, in 1858, is succinctly stated in The Bank of Pennsylvania v. Spangler, 8 Casey 474, and it is not necessary to repeat the details here. It may, however, be observed that from 1823 to 1849, the great object of the legislature seems to have been to provide for, and if possible prevent the suspension of specie payments by the banks by penalties and forfeitures of their charters, which in practice were found entirely inadequate in the general suspensions of 1837 and 1839. The joint resolution of the 3d April 1840, provided for the resumption of specie payments by the banks on the 15th January 1841, but was rendered inoperative by the total failure of the Bank of the United States. This resolution was repealed by the 17th section of the Act of 4th May 1841, and on the 12th March 1842, an act was passed to provide for the resumption of specie payments by the banks of this Commonwealth, and for other purposes. The 2d section provided for certain proceedings in the courts, and a consequent compulsory assignment by the directors, or the appointment of trustees by the court, and the 3d section allowed the directors to make a general assignment, subject to the conditions and provisions relating to assignments by directors of banks, provided in the 2d section. The Act of 1849 was intended to be an improvement on the former system, but has entirely failed of its objects by not extending the provisions consequent upon a compulsory assignment to all assignments, whether voluntary or otherwise.

The 2d section requires that the total liabilities of the bank, exclusive of capital stock, shall not at any time exceed three times the amount of its capital stock paid in, nor the debts ever amount to more than four times the amount of its capital stock paid in, and the bank shall neither loan nor discount, where its circulation shall be equal for thirty consecutive days to three times the amount of its specie and notes of specie-paying banks in its possession belonging to said bank, and any balances standing to the credit thereof in specie-paying banks convertible into specie at the pleasure of the bank. By the 3d section, the auditor-general may at any time require the cashier to make a statement or return, under oath, for any consecutive period of thirty days he may designate, and if, upon the return so made, it shall appear that any provisions of the 2d section have been violated for the period of thirty days, so designated by the auditor-general, he shall give notice thereof to the governor, who shall thereupon issue his proclamation declaring the charter of the said bank to be forfeited. By the 4th section, if the charter shall be forfeited in the manner prescribed in the preceding sec-

tion, then the directors shall make an assignment in the manner provided in the Act of 12th March 1842. After various provisions, it is enacted by the 15th section that the stockholders shall be liable to the creditors of the bank, being noteholders in their individual capacity for the amount of all notes issued, in an amount equal to the par value of the stock owned and possessed by them, and the manner of enforcing such liability shall be as follows : In case the said bank shall violate the provisions of any Act applicable to it so as to forfeit its charter, or becomes insolvent, in failing circumstances, by reason of the mismanagement of its affairs, and *is compelled to make an assignment under the provisions of this act, or under the provisions of the Act of 12th March* 1842, the assignees are to make a fair appraisement of the assets at their cash value, and a list of all debts due by said bank, and if it appear the assets are insufficient to redeem the circulation, the stockholders shall be liable to make good such deficiency in proportion to the amounts of stock held by them at the time of the assignment; but their joint liability shall not exceed the par value of their stock. The 16th, 17th, 18th, 19th, and 20th sections provide for the mode of enforcing this liability by the assignees. The 23d section provides for the liability of the directors to the creditors of the bank, in case of a wilfully fraudulent insolvency, and the 24th section defines what shall be deemed a fraudulent insolvency, whilst the 25th section provides that *" the term insolvency, used in this act, shall be construed to apply to this bank when it is compelled to make an assignment,"* and then follow various provisions in that section, and in the 26th, 27th, and 28th sections, applicable to the case of such compulsory assignments.

By the 30th section, if the said bank shall at any time fail or refuse to redeem its notes, and pay its liabilities in gold and silver coin, upon demand being made at the banking-house of the said bank, during banking hours, such failure and refusal shall be deemed and held to be an absolute forfeiture of the charter of the said bank.

It is clear, therefore, that these several apparently stringent and punitive provisions are only applicable to the case of a compulsory assignment, whether under the Act of 1842 or that of 1849, and so far the opinion of Judge Hayes, in the mandamus case, is a proper exposition of the law.

By the 3d section of the Act of 1842, the directors are allowed to make a general assignment of all the estate, real and personal, of the bank, subject to the conditions and provisions relating to assignments by directors of banks, provided in the 2d section of the Act, and by the 21st and 22d sections of the Act of 1849, the provisions of the Act of 14th June 1836 shall be held to apply to all assignments made by the bank, and the courts are

to exercise all the powers therein given, in addition to the authority conferred by this Act, to compel a settlement of the accounts of the assignees, and a distribution of the assets amongst the creditors in the following order: First, noteholders; second, depositors; third, all other creditors, except stockholders, who shall be last paid.

It is evident, therefore, that it was in the power of the directors of the bank, by a voluntary assignment, to evade and frustrate those supposed salutary precautions of the legislature intended to prevent fraudulent insolvency. The 13th article of the 3d section of the Act of 1824, imposing a personal liability on the directors, impairing the capital stock by declaring dividends, remained in full force, and when the bank made a general assignment these liabilities became vested in the assignee, who was of course bound to collect them as well as any other assets of the institution. This, in fact, was a common law liability, enforced, it is true, by a statutory provision, which prescribed the proof that it was necessary to fix the liability of a director, who, if present when a dividend was made, was adjudged to be consenting thereto, unless he forthwith entered his protest on the minutes of the board, and gave public notice to the stockholders of the declaring of such dividend.

In the revised Act of the 16th April 1850, regulating banks, which was framed on the model of the Act of 1849, we find, in the 12th article of the 10th section, a similar liability is imposed on the directors in the case of the declaration of dividends impairing the capital stock, and there is a similar provision in the 22d section of the Act of 1st May 1861, the supplement to an Act to establish free banking in Pennsylvania, and to secure the public against loss from insolvent banks, approved March 31st 1860.

The court below were therefore in error in overruling the exceptions to the report of the auditors, and confirming their report.

Decree reversed, and record remitted, to be proceeded in according to law.